## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                             Case No. 02-81159-WRS
                                                  Chapter 13
STEVEN G. WOODRUFF
TRACY D. WOODRUFF,

        Debtors

STEVEN G. WOODRUFF,

        Plaintiff                     Adv. Pro. No. 09-8014-WRS

   v.

CHASE HOME FINANCE LLC,

        Defendant

## <u>MEMORANDUM DECISION</u>

      This Adversary Proceeding came before the Court for a hearing on the motion to dismiss

filed by Defendant Chase Home Finance, LLC, on November 20, 2009.  Plaintiff Steven G.

Woodruff was present by counsel Steve Olen and Chase was present by counsel Danielle J.

Szukala and Stephen B. Porterfield.  This is a putative class action suit, however, the Court has

not certified class status and that is not in issue here.  The motion has been briefed.  (Docs. 33,

34, 38, 39).  For the reasons set forth below, the motion is DENIED.

## <u>I.  FACTS</u>

      The Plaintiff filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy

Code in this Court on August 23, 2002.  (Case No. 02-81159, Doc. 1).[1]  At all times relevant, the

---

[1] References to documents in the pending Adversary Proceeding file will be to the
applicable document number.  (i.e. Doc. 27 is Document No. 27 in Adversary Proceeding

Plaintiff has owned a home which is subject to a mortgage in favor of Defendant Chase Home Finance. On May 6, 2003, Chase filed a motion for relief from the automatic stay in the bankruptcy case alleging that the Plaintiff was delinquent on the mortgage payments which had become due since the date of the Chapter 13 Petition. (Case No. 02-81159, Doc. 35). The Plaintiff alleges that the affidavit filed in support of Chase's motion was false, known by Chase and its lawyers to be false and that there is an established practice of filing false affidavits. The Court will first discuss the Debtors' financial situation and the various iterations of their Chapter 13 Plan as it is against the backdrop of the Debtors' Chapter 13 Plan that the Chase Affidavit was filed in support of its motion for relief from the automatic stay.

The Debtors filed a Chapter 13 Plan with their petition, proposing to make the mortgage payments directly to Chase. (Case No. 02-81159, Doc. 2). In other words, the Plan provides that the regular monthly payments would be made by the Debtor directly to Chase and not paid through the Chapter 13 Trustee who would then disburse to Chase. The original Chapter 13 Plan did not indicate that the mortgage was delinquent and therefore there was no provision to cure the delinquency. The Debtors amended their Plan on September 23, 2002. (Case No. 02-81159, Doc. 13). The Amended Plan increased the payments to be made to the Chapter 13 Trustee from $97.00 to $102.00 per month, but did not change the treatment of the Chase mortgage nor did it recognize that their mortgage was delinquent.

---

Number 09-8014, references to documents in the main bankruptcy case will be preceded by the Case Number. (i.e. Case No. 02-81159, Doc 37 is Document No. 37 in the main case file). Counsel for Chase requested, at oral argument, that the Court take notice of its record in Case No. 02-81159.

On October 17, 2002, Chase filed a Proof of Claim wherein it contended that the Debtors had not made their August 1, 2002, mortgage payment. (Case No. 02-81159, Claim No. 7). Thus, there was an inconsistency between the Debtors' Plan and the Proof of Claim filed by Chase. On October 21, 2002, the Court confirmed the Debtors' Amended Plan, without objection from Chase, and without reconciling the difference between the Chase claim and the Debtors' Plan. (Case No. 02-81159, Docs. 19, 21, 22).[2]

On December 12, 2002, the Debtors moved to modify their Chapter 13 Plan to provide for the delinquency on the Chase mortgage. (Case No. 02-81159, Docs. 27, 28). The December 12, 2002, Plan reported a mortgage delinquency to Chase in the amount of $491.54, which it proposed to pay at a rate of $17.00 per month. No objections were filed and the December 12, 2002 Plan was confirmed on February 20, 2003. (Case No. 02-81159, Doc. 32). Thus, the Plan calls for the Debtor to make her regular monthly mortgage payments directly to Chase, while the delinquency was to be paid by the Chapter 13 Trustee to Chase out of Plan payments made by the Debtor.[3]

---

[2] Where there is a discrepancy between the mortgage delinquency shown in a Plan and in the proof of claim, the proof of claim amount controls. LBR 3015-4(b). Thus, the burden is on the Debtor to resolve the discrepancy, or the Court accepts the proof of claim amount. Such discrepancies may be resolved by objecting to the claim, amending the Plan or by filing a stipulation.

[3] Bankruptcy Courts generally handle mortgage payments in one of two ways. As described above, this Court generally requires the debtor to make his regular monthly payment (sometimes called the "maintenance" payment) directly to the holder of the mortgage. Mortgage delinquencies, the so-called "cure" of 11 U.S.C. § 1322(b)(5), are paid by the Trustee out of payments made by the Debtor. Some Courts require the debtors to make all payments to the Chapter 13 Trustee who then disburses all payments, both regular monthly payments and the "cure" for the delinquency to the mortgage holder. Both methods are consistent with the Code and each method has its own advantages and disadvantages. What is important is that one bear in mind which method is in use.

On May 6, 2003, Chase filed a motion for relief from the automatic stay. (Case No. 02-81159, Doc. 35). In its motion, Chase alleged that "the Debtors' account with Movant is delinquent for the post-petition payments due February 2003 and thereafter. The last payment was received and applied to the payment due January 2003." Id. Notwithstanding the fact that the Debtor had a confirmed plan which provides for a maintenance payment on the Chase mortgage as well as a cure of the delinquency, Chase alleged in its motion that "Movant does not have, and has not been offered, adequate protection for its interest in the real property subject to said Mortgage."[4] Id. Chase went on to allege that "Movant as holder of the mortgage, has no reasonable prospects for protection of its interest other than through foreclosure. If the Movant is not permitted to foreclose its lien or security interest in said property, it will suffer irreparable injury, loss and damage." Id.

On May 20, 2003, fourteen days after filing its motion, Chase filed an Affidavit. (Case No. 02-81159, Doc. 37). The affidavit is remarkable in several respects. First, it indicates that Chase received a payment in the amount of $446.29 on August 29, 2002, which it applied to the payment due August 1, 2002. Thus, Chase received a postpetition maintenance payment and applied it to a prepetition period, contrary to the terms of the Debtors' Plan and the Court's Order of Confirmation. This confusion of "maintenance" payments with "cure" is a problem which frequently vexes bankruptcy courts. Moreover, the pay history attached to the Chase affidavit indicates the receipt of 7 payments during the period beginning with the date of the

---

[4] In cases such as this, the Court construes such motions as grounded on a lack of adequate protection for its interest in the Debtors' property resulting from a postpetition mortgage default. Chase's claim that they had not been offered adequate protection was patently false. In fact they had been offered adequate protection and they had agreed that the protection was adequate. The sole basis for their motion was the alleged default in postpetition payments.

-4-

petition and ending May 5, 2003. The text of the Affidavit indicates that another payment was received on May 14, 2003, for a total of 8 payments over a period of time when 9 had come due. The motion, the affidavit and the account history are all inconsistent with one another. Thus, it would appear that Chase cranked up all of this judicial machinery because the Debtor was, at most, one payment behind. Moreover, the record does not indicate that any efforts were made to resolve this matter out of court.[5]

On June 16, 2003, the Court entered an agreed order which was prepared by the lawyers for Chase and submitted to the Court with the Debtors' permission. (Case No. 02-81159, Doc. 39). The Order makes no effort to reconcile the inconsistencies between the motion, the affidavit and the account history. Indeed, the order sets forth the amount of $533.88 for the post-petition delinquency, which appears to be inconsistent with the motion, the affidavit and the account history. Notwithstanding Chase's dire prediction that it would "suffer irreparable injury, loss and damage" if it was not permitted to foreclose its mortgage, it was apparently content with the terms of its agreed order, leaving the Debtor in possession of his home.[6]

---

[5] The Court would prefer that two things happen before a secured lender files a motion for relief from the automatic stay. First, the creditor should make some effort to resolve things without invoking judicial process. Second, if the parties are unable to resolve the matter on their own, the moving party know the status of its account before it files its motion. For example, the moving party should know which payments have been received and which have not and be able to provide the debtor and the court a reasonably clear accounting. On the other hand, debtors should, at a minimum have proof of payments made at least since the filing of the petition in bankruptcy. See, LBR 4002-1(c)(requiring debtors to retain proof of payments made under their Plan, including "direct" payments to secured lenders).

[6] Motions for relief from the automatic stay are typically loaded with dire predictions as to how the lender will be harmed if they are not granted relief from the automatic stay. Even where, as here, it appears that the Debtor was only one payment behind. All of which is to say that this Court views these motions with healthy skepticism.

The Affidavit filed by Chase was purportedly signed on May 12, 2003. (Case No. 02-81159, Doc. 37). Yet, in the text of the Affidavit, it is stated that "the last payment made herein was received on May 19, 2003 and applied to the payment due March 2003." Id. The Plaintiff alleges in his Amended Complaint that "on May 20, 2003, the Defendant, with the active participation and consent of one or more of its attorneys, filed an improper and fraudulent affidavit in support of the motion for relief from stay that Defendant had filed in Plaintiff's bankruptcy case." (Doc. 27, para. 8). The gravamen of the complaint is that Chase has made an institutional practice of filing false affidavits in this Court, and elsewhere, in support of its motions for relief from the automatic stay. It is alleged that this harms not only the individual homeowners but that it defiles the Court and prevents it from operating properly. Plaintiff seeks injunctive relief, damages and other relief. The Court notes that there are two similar pending class action suits in this Court. McBride v. Citimortgage, Inc., Adv. Pro. No. 09-1061; and Vereen v. Wells Fargo Bank, N.A., Adv. Pro. No. 09-3033. At the November 20, 2009 hearing, the Court was advised that there were also class actions suits filed against Defendant Chase and other mortgage lenders in both the Northern and Southern Districts of Alabama.[7] If the allegations contained in the several complaints prove to be true, it appears that this is part of a massive, industry-wide practice, if not conspiracy, on the part of large institutional lenders to defraud debtors and mislead the bankruptcy courts, thereby inflating claims, generating excessive attorney's fees and, perhaps in some cases, leading to wrongful foreclosures.

---

[7] In an unpublished decision recently handed down in the Southern District of Alabama, a motion to dismiss a complaint in an Adversary Proceeding which is on all fours with this Adversary Proceeding was denied. Tate et. al, v. Citimortgage, Inc., Adv. Pro. 09-1059, Case No. 99-13169 (Bankr. S.D. Ala. Order dated October 29, 2009)(Mahoney, J.)(copy of decision attached as exhibit to Doc. No. 38).

## II.  LAW

### A.  Jurisdiction, Core Proceeding and Preliminary Matters

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) and (A).

The Court will divide its discussion of Chase's motion to dismiss as follows.  First, it will consider whether Woodruff has stated a claim for relief under his "fraud on the court" theory. Second, the Court will consider whether there is a cause of action under Section 105 of the Bankruptcy Code.  Third, the Court will consider whether Woodruff's claims are otherwise barred under the doctrines of res judicata, waiver, or Rule 60, Fed. R. Civ. P.

### B.  Woodruff has stated a cause of action sounding in "fraud on the court."

This Adversary Proceeding is before the Court upon Chase's motion to dismiss.  (Docs. 33, 34, 39).  Motions to dismiss are governed by Rule 12(b)(6), Fed. R. Civ. P., which is made applicable here by Rule 7012, Fed. R. Bankr. P.  The Supreme Court has handed down two decisions recently on the standard to be applied by a court ruling on a motion to dismiss. Ashcroft v. Iqbal, 129 S.Ct. 1937, 173 L.Ed.2d 268 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The Supreme Court stated in Ashcroft that:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [citations omitted]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," it is asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint please facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Ashcroft at 129 S.Ct. 1949 (citing <u>Bell Atlantic v. Twombly</u>).

The Supreme Court set forth two principles in <u>Ashcroft</u>. First, "a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss. . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id</u>. at 1949-50. In <u>Ashcroft</u>, the Supreme Court stated that:

In <u>Twombly</u>, . . . the Court found it necessary first to discuss the antitrust principles implicated by the complaint. Here too we begin by taking notice of the elements a plaintiff must plead to state a claim of unconstitutional discrimination against officials entitled to assert the defense of qualified immunity. <u>Id</u>. at 1947.

In the case at bar, the Plaintiff alleges an independent action for fraud on the Court. Such actions have been recognized by the Supreme Court. The leading case on these kinds of independent actions was handed down by the Supreme Court in 1944. <u>Hazel-Atlas Glass Co. v. Hartford-Empire Co.</u>, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). In <u>Hazel-Atlas Glass</u>, an independent action was brought seeking to avoid a judgment which had been obtained by

-8-

fraud on the Court. That case involved a claim for patent infringement. Hartford brought suit for patent infringement in 1928. Hartford ultimately prevailed, in a judgment entered in 1932, predicated on an article published in a trade journal, which had actually been authored by one of Hartford's attorneys, but published under the name of William P. Clarke, who was a prominent public figure, lending credence to the claim made by Hartford in its litigation. The evidence showed that Clarke had been paid $8,000 in depression-era money for perpetrating this subterfuge. Hartford subsequently learned of the fraud and brought suit against Hazel in 1939, alleging that a fraud had been perpetrated on the Court.

The Supreme Court in <u>Hazel-Atlas Glass</u>, found that:

> Equitable relief against fraudulent judgments is not of statutory creation. It is a judicially devised remedy fashioned to relieve hardships which, from time to time, arise from a hard and fast adherence to another court-made rule, the general rule that judgment s should not be disturbed after the term of their entry has expired. Created to avert the evils of archaic rigidity, this equitable procedure has always been characterized by flexibility which enables it to meet new situations which demand equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations.

<u>Hazel-Atlas Glass Co.</u>, at 248.

In a more recent decision, the Supreme Court stated that "an independent action should be available only to prevent a grave miscarriage of justice." <u>United States v. Beggerly</u>, 524 U.S. 38, 47, 118 S.Ct. 1862, 1868 (1998). In <u>Beggerly</u>, the plaintiffs had lost a quiet title suit to the Government. They later hired an expert to search the National Archives in Washington. The

expert found evidence of an August 1, 1781 grant which, they believed, supported their claim. In <u>Beggerly</u>, there was no fraud or concealment.

Given that the Court must accept as true the factual allegations contained in the complaint, the Court will next deal with the discrepancy between the way the Plaintiff describes his suit as opposed to the way it is described by Chase. The Plaintiff alleges that Chase filed a "fraudulent affidavit." (Doc. 27). Moreover, the Plaintiff alleges that this filing of a fraudulent affidavit was a "practice" repeated in hundreds of cases in this District. Chase, in contrast, characterizes this as a mere discrepancy in the dates of an affidavit and certain attachments. (Doc. 39). The Plaintiff is not required to plead all of its evidence, rather he is required only to alleges facts, taken as true, show that he has a claim that is "plausible on its face." The facts alleged here are that Chase filed false affidavits, knowing that they were false, in support of its motion for relief from the automatic stay. Moreover, it is alleged this was done as a matter of its practice and not as a result of an isolated error or even an isolated misdeed.

Chase relies heavily on a case handed down by the Eleventh Circuit where a claim of fraud on the court was rejected on the grounds that the plaintiff was merely attempting to "relitigate the issues." <u>Travelers Indemnity Company v. Gore</u>, 761 F.2d 1549, 1552 (11th Cir. 1985); <u>see also</u>, <u>Securities & Exchange Commission v. ESM Group, Inc.</u>, 835 F.2d 270 (11th Cir. 1988)(finding that no fraud had been committed); <u>Stevens v. East Alabama Health Care Authority</u>, 2005 WL 3288735 (M.D. Ala. Dec. 5, 2005)(rejecting a claim of fraud on the court holding that present of lawyer during perjury does not transform perjury case to one of fraud on the court).

The Eleventh Circuit in <u>Gore</u> described "fraud on the court as follows."

-10-

> Fraud on the court should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudicating cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

Gore, at 1551, (citing 7 Moore's Federal Practice para. 60.33)(also citing Great Coastal Express v. Brotherhood of Teamsters, 675 F.2d 1349, 1356 (4th Cir. 1982); Kermit Medical Products v. N.&H Instruments, 616 F.3d 833, 837 (5th Cir. 1980); Williams v. Bd. of Regents, 90 F.R.D. 140 (M.D. Ga. 1981)).  The question here is whether the fraud alleged by the Plaintiff meets that standard.

Viewing one instance of filing a false affidavit, in isolation, one may make a creditable argument that such fraud is at most inter-party fraud and not a fraud on the court.  If one assumes that Chase filed an intentionally false affidavit the debtor should be able to detect the fraud and bring the matter to the Court's attention.  Such fraud, on its face, would not meet the standard set out in Hazel-Atlas Glass and Gore.  However, the Court is of the view that the allegations in this case should be considered in the context of a live Chapter 13 case, with the attendant pressures and concerns peculiar to this kind of case.

There is no bright line which separates cases where a claim for fraud on the court is stated, such as in Hazel-Atlas Glass, from those where there is intra-party fraud, not arising to fraud on the court, such as in Gore.  There are five factors present here which, in the Court's judgment, puts it in the former category, rather than in the later:  (1) large numbers of motions for relief from the automatic stay are filed; (2) there is only a short period of time to dispose of these motions; (3) there is a huge economic disparity between the resources available to the

-11-

parties; (4) the subject matter is critical to the debtor's survival; (5) these matters are only rarely litigated to a final order after a hearing on evidence.

First, motions for relief from the automatic stay are filed in very large numbers in the bankruptcy courts. In the Middle District of Alabama alone, during the year 2009, more than 3,600 motions for relief from the automatic stay were filed. In most of these, a secured lender was attempting to either foreclose on the family home or repossess the family car. It is the function of the bankruptcy courts to provide relief to debtors as prescribed by Congress, while balancing the rights of creditors and debtors. Any fraud in connection with this balancing process necessarily hinders the proper functioning of the bankruptcy courts. The sheer numbers involved here and the allegation that fraud is being perpetrated on an institutional basis upon large numbers of consumers weigh in favor of a broad based remedy.

Second, motions for relief from the automatic stay are unique in that such matters are necessarily handled with great speed. The Bankruptcy Code provides that such motions are granted automatically if not ruled upon in 30 days.[8] In none of the reported cases was the

---

[8] 11 U.S.C. § 362(e) provides as follows:

(e)(1) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be

-12-

Case 09-08014    Doc 42    Filed 01/27/10    Entered 01/27/10 16:53:35    Desc Main
Document    Page 12 of 22

disadvantaged party operating under such time pressure.  It is the moving party that decides if

and when to file a motion for relief from the automatic stay.  It has the advantage because it

decides when the 30-day clock of § 362(e) begins to run and it is in control of its evidence.  In

Gore, the Court stated that "perjury and fabricated evidence are evils that can and should be

exposed at trial, and the legal system encourages and expects litigants to root them out as early

as possible."  Gore, at 1552.  Yet, a motion for relief from the automatic stay is a contested

matter, which under the Bankruptcy Rules does not provide all of the procedural safeguards that

are  provided in a civil action.  See, Rules 9013 and 9014, Fed. R. Bankr. P.  Thus, the unique

procedural rules governing motions for relief from the automatic stay, make it much more

---

concluded not later than thirty days after the conclusion of such preliminary
hearing, unless the 30-day period is extended with the consent of the parties in
interest or for a specific time which the court finds is required by compelling
circumstances.

(2) Notwithstanding paragraph (1), in a case under chapter 7, 11, or 13 in which
the debtor is an individual, the stay under subsection (a) shall terminate on the
date that is 60 days after a request is made by a party in interest under subsection
(d), unless--

　　　　(A) a final decision is rendered by the court during the 60-day period
beginning on the date of the request; or

(B) such 60-day period is extended--

　　　　(I) by agreement of all parties in interest; or

　　　　(ii) by the court for such specific period of time as the court finds is
required for good cause, as described in findings made by the court.

-13-

difficult to detect fraud, which might otherwise be exposed during the usual discovery process provided in a civil action.

Third, there is an enormous disparity in the resources available to the parties. Chase is one of the largest financial institutions in the world, while 90% of the Chapter 13 debtors in this district have incomes which are below the median for wage earners in this State.[9] In this case, the Plaintiff and his wife together report combined net income of $3,000 per month. (Case No. 02-81159, Doc. 1, Sch. I). To be sure, a huge economic disparity by itself does not get the disadvantaged party very far, however, it is a factor, when considered with others weighs into the mix.

Fourth, the debtor is defending the family home. Chase, a large financial institution comes before the court represented by specialists who are playing with "house money." The consequence of a "loss" in a motion for relief from the automatic stay usually involves nothing more than delay, as it does not lose its underlying property interest in the debtor's residence. On the other hand, the debtor is defending the family home. The consequence of a loss is considerably different. When defending the home, a debtor may be reluctant to argue the point

---

[9] In 2006, this Court undertook a study of its Chapter 13 debtors comparing, among other things, the income level of debtors filing Chapter petitions prior to the effective date the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (i.e. October 16, 2005) with those filing after. In this District, 87% of Chapter 13 Debtors during a 12-month period prior to the effective date of the Act, had incomes below the median for wage earners in this State. This compared to 90% of the Debtors during a 12-month period after the effective date of the Act. This statistic was surprising in that the purpose of the Act was to force above median income individuals who meet certain financial criteria out of Chapter 7 and into Chapter 13. Thus, one would have expected that the percentage of below median Chapter 13 filers would have gone down rather than up after the effective date of the Act. More to the point of this case, is that Chapter 13 debtors are generally blue collar to "working poor" families with limited resources who are susceptible to falling prey to schemes such as those alleged here.

as to whether he is one or two payments behind in his mortgage. That is, when faced with a false affidavit, which the debtor may well believe is false, he may be reluctant to fight the matter, given the consequences to his family if he fails. It is would be unconscionable if, as is alleged here, a large financial institution were to make it standard operating practice to file false affidavits for the purpose of leveraging more money out of beleaguered borrowers.

Fifth, is that given the large numbers of motions for relief from the automatic stay filed, only very few are actually litigated in court at a hearing where evidence is taken. Of the 3,900 motions for relief from the automatic stay filed in this Court last year, in fewer than a dozen instances did the court actually conduct an evidentiary hearing and make findings of fact and conclusions of law. Moreover, in most of those instances, the moving party was a local bank and not a large national bank such as Chase. Indeed, the large national banks such as Chase file such motions frequently but evidentiary hearings are exceedingly rare. This suggests that the fraud allegedly perpetrated by Chase goes undetected because there are so few actual hearings. In those instances where the debtor does detect the "error" Chase can easily withdraw its motion under the guise of an error, thwarting detection of a larger pattern by the Court, and moving on to more vulnerable debtors.

Having considered the allegations contained in Woodruff's Amended Complaint, the Court finds that he has stated a cause of action for a fraud on the Court. If, as alleged in the Amended Complaint, Chase is making a practice of filing false affidavits in connection with motions for relief from the automatic stay, the "judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented." Gore, at 1551. Motions for relief from the automatic stay are contested matters which are handled much differently than

civil actions.  As set forth in detail, these differences put the debtor at a considerable

disadvantage.  Moreover, the Court would be thwarted in detecting such fraud given the unique

nature of these kinds of proceedings.  It is these differences which compel a finding that

Woodruff has stated a claim here.

The United States Bankruptcy Court for the Southern District of Alabama, in a case

which appears to be on all fours with this case, denied a motion to dismiss stating:

> No court can be prevented from determining whether any attorney
> or litigant has abused the court or the judicial process merely
> because no party caught the impropriety before a ruling.  A
> debtor's focus on her or her own issues should not allow fraudulent
> practices to be ignored or punishment for them avoided.  The
> damage alleged in this case is far more widespread than damage to
> an individual debtor.  The damage is to the system itself.  If
> improper procedures are followed by parties or their counsel, they
> must be unearthed, examined, and punished if necessary.  This is
> the only way to keep the judicial process fair and above criticism.

Tate v. Citimortgage, Inc. (In re: Tate), Adv. Pro. No. 09-1059 (unpublished order entered Oct.

29, 2009, denying motion to dismiss)(Mahoney, J.)(Doc. 38).  The holding of the court in Tate is

equally applicable here.


### C.  A Private Right of Action under Section 105


Chase argues that Section 105 of the Bankruptcy Code does not provide an independent

right of action and for that reason, this civil action should be dismissed.  The Plaintiff cites

liberally to section 105 of the Bankruptcy Code in his complaint.  Section 105(a) states that "the

court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title." In the only Supreme Court decision which considers this language, it was stated that "these statutory directives [referring to Section 105] are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." U.S. v. Energy Resources Co., Inc., 595 U.S. 545, 549, 110 S.Ct. 2139, 2141, 109 L.Ed.2d 580 (1990). Neither the United States Supreme Court nor the United States Court of Appeals for the Eleventh Circuit has ruled upon the question of whether Section 105 of the Bankruptcy Code provides a basis for an independent cause of action. Given the Court's conclusion that Woodruff had stated a claim under his "fraud on the court" theory, it is not necessary to reach that question here. This Court is of the view that this civil action is an independent action alleging a fraud on the Court, seeking relief from prior orders entered as a result of the fraud, and not an action predicated on Section 105 of the Bankruptcy Code. However, Section 105 may prove useful as a basis for a remedy in the event the Plaintiff is able to prove at trial that he has actually proved a fraud on the Court so that the Court may better carry out the functions assigned it by Congress.

A Bankruptcy Court in Texas handed down a decision discussing whether Section 105 provided a private right of action. Rodriguez v. Countrywide Home Loans, Inc., (In re Rodriguez), 396 B.R. 436 (Bankr. S.D. Tex. 2008)(finding that the debtor had stated a claim for relief and denying motion to dismiss). In Rodriguez, Chapter 13 debtors brought suit arguing that Countrywide, their mortgage holder, had improperly applied payments, improperly charged fees to their account and generally took action which defeated the efficacy of their Chapter 13 Plan. Countrywide argued, as does Chase here, that Section 105 does not provide a right of action. The Bankruptcy Court in Rodriguez stated that:

> While it is true that the considerable discretion conferred on courts
> sitting in bankruptcy by § 105 is not unlimited, in that it is not a
> "roving commission to do equity," . . . a court is well within its
> authority if it exercises its equitable powers to enforce a specific
> code provision . . . Thus, § 105 does not itself create a private right
> of action, but a court may invoke § 105 "if the equitable remedy
> utilized is demonstrably necessary to preserve a right elsewhere
> provided in the Code."

Id. at 457 (citations omitted).  In Rodriguez, a mortgage lender acted unilaterally in denying Chapter 13 Debtors the benefit of their Chapter 13 discharge.  In Rodriguez, as here, Bankruptcy Court action is necessary to protect the bankruptcy process from actions taken by creditors.  There would be no point in filing a Chapter 13 bankruptcy if a mortgage lender could deny its benefits without being held accountable.  Chapter 13 Plans and orders confirming them would become hollow and useless things if a Court could not do anything about it when a mortgage lender chose to ignore the provisions of a confirmed Chapter 13 Plan.

The position taken by Chase here is equally untenable.  When a debtor files a petition in bankruptcy, a stay arises as a matter of law.  11 U.S.C. § 362(a).  The Bankruptcy Code permits Creditors to move the Court and obtain relief from the stay § 362(d), provided that good cause or a lack of adequate protection is shown.  The actions taken by Chase to date suggest that it would not quarrel with these propositions.  However, the implication of its argument here is that it is free to file false affidavits in a bankruptcy court because the bankruptcy courts are powerless to do anything about it after the fact. Whether the Plaintiff's action is cast as one under § 105, the Court's inherent power, or an independent action for fraud on the court, a bankruptcy court may act to remedy the wrong complained of here.

-18-

**D.  Res judicata, waiver, Rule 60**

Chase argues, in the alternative, that Woodruff's suit is barred by the doctrines of res judicata, waiver and Rule 60, Fed. R. Civ. P.  The Court will consider each of these grounds in order.

As this is an independent action seeking relief from an order or this Court based upon allegations of fraud on the Court, a prior order of this Court is a prerequisite to such an action. Were the doctrine of res judicata a bar to such suites, independent actions would become extinct. A prior judgment would be both a prerequisite and a bar to suit.

> Independent actions must, if Rule 60(b) is to interpreted as a
> coherent whole, be reserved for those cases of "injustices which, in
> certain instances, are deemed sufficiently gross to demand a
> departure" from rigid adherence to the doctrine of res judicata.

United States v. Beggerly, 524 U.S. 38, 46, 118 S.Ct. 1862, 1867 (citing Hazel-Atlas Glass Co.).

Chase further alleges that this action is barred by the doctrine of waiver.  As the Court is bound to accept as true, the well pleaded allegations contained in the complaint, and as there is nothing affirmative showing a waiver, this argument must necessarily fail.

As a final matter, Chase alleges that this suit is barred by the one-year time limit in Rule 60(c)(1), Fed. R. Civ. P., which is applicable pursuant to Rule 9024, Fed. R. Bankr. P.  However, Rule 60(d) provides an exception which is applicable here.  "This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding . . . (3) set aside a judgment for fraud on the court."  Given the Court's conclusion

-19-

that the Plaintiff has stated a claim for fraud on the Court, the exception contained in Rule 60(d) applies hear and does not bar this suit.

## III. CONCLUSION

The gist of the Plaintiff's complaint here is that Chase has made it a policy to file false affidavits in this Court in support of its motions for relief from the automatic stay, which are filed in large numbers in this Court. The Court has not heard evidence and discovery has not taken place. The Court is aware that the evidence actually produced at trial sometimes does not live up to the billing in the pleadings, nevertheless, the Court is taken aback by the allegations made by the Plaintiff here. Manipulation of the judicial machinery by way of calculated and systematic perjury by a large institutional creditor on a large scale is a most serious matter. The Court concludes that the Plaintiff has stated a claim for which relief may be granted and for that reason will deny, by way of a separate order, the motion to dismiss filed by Chase.

Done this 27th day of January, 2010.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Steve Olen, Attorney for Plaintiff
   Stephen B. Porterfield, Attorney for Defendant

Case 09-08014    Doc 42    Filed 01/27/10    Entered 01/27/10 16:53:35    Desc Main
                    Document      Page 21 of 22

-22-